**UNITED STATES DISTRICT COURT**
**WESTERN DISTRCT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| TALVEER GILL<br><br>　　　　Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA<br><br>　　　　Defendants | Case No.: _____<br><br><br>COMPLAINT<br><br><br><br>JURY DEMAND |

NOW COMES Plaintiff Talveer Singh Gill, by and through his attorney, and alleges as follows:

**I.　　PARTIES**

1. Plaintiff Talveer Singh Gill is an individual, and a citizen of Canada. He is currently residing in British Columbia.

2. Defendant United States of America is a sovereign being sued under the Federal Tort Claims Act.

Complaint JURY DEMAND - 1

Jason E. Ankeny
Jason E. Ankeny P.S., Inc.
WSBA# 52908
130 N. Central Ave.
Suite 309
Phoenix, AZ 85004
(602) 606-8848
jason@ankenylawcorp.com

## II.     JURISDICTION AND VENUE

3. This action arises under the *Federal Tort Claims Act* ("FTCA"), *28 U.S.C. §2671 et seq*.

4. This Court has jurisdiction over the FTCA claims under *28 U.S.C. §1346(b)* and *28 U.S.C. §2680(h)*. Plaintiff has exhausted the administrative remedies prescribed by *28 U.S.C. 2675* by timely presenting the tort claims to CBP on or about July 21, 2020, which claims were denied by letter arriving on or about February 02, 2021. This complaint is filed within the six-month deadline of the denial notice.

5. Venue is proper in the United States District Court for the Western District of Washington under *28 U.S.C. §1402(b)* because the events giving rise to the cause of action arose in the district of Western Washington.

## III.     INTRODUCTION AND LEGAL BACKGROUND

6. Plaintiff brings this action against the United States under the Federal Tort Claims Act ("FTCA") for damages resulting from intentional torts committed by law enforcement officers employed by Defendants United States and United States Customs and Border Protection ("CBP").

7. CBP officers are federal agents with full law enforcement authority to make arrests, carry firearms, and patrol ports of entries. Many foreigners come to the United States as "E-2" nonimmigrant visitors. E-2 nonimmigrant (temporary) classification is specifically for investors, as set forth in 8 U.S.C. § 1101(a)(15(e).

Complaint JURY DEMAND - 2

Jason E. Ankeny
Jason E. Ankeny P.S., Inc.
WSBA# 52908
130 N. Central Ave.
Suite 309
Phoenix, AZ 85004
(602) 606-8848
jason@ankenylawcorp.com

8. CBP agents spent close to 2 years actively targeting Plaintiff in order to tag him as a drug trafficker without the requisite burden of proof to establish his involvement in illicit criminal activity. On or about December 09, 2018, Plaintiff was detained for 6-7 hours without food or water; his sworn statement was supplemented and manipulated by CBP officers who made gratuitous remarks during his secondary inspection; and the officers clapped and laughed within Plaintiff's earshot as the 17-page sworn statement printed.

9. On or about December 09, 2018, CBP officers subsequently canceled Plaintiff's valid E-2 nonimmigrant visa. The basis of the cancellation of Mr. Gill's E-2 visa was that he was "associating with 5 people". The officers effectively ruined Plaintiff's personal and professional life through their classification of Plaintiff as a drug trafficker and subsequent loss of his privilege to enter the United States.

10. Plaintiff seeks monetary damages to remedy the tortious actions, treatment and erroneous cancellation of his visa.

IV.   **FACTUAL ALLEGATIONS**

11. Mr. Gill was issued an E-2 nonimmigrant visa on or about July 29, 2011 as the Director of Operations for S&R Gill Farms, Inc. On or about August 15, 2016, Mr. Gill's in-person visa renewal interview was waived, and his E-2 visa was renewed for another 5 years. According to 8 U.S.C. §1202(h)(1)(B)(iv), an in-person interview requirement can by waived by a

Complaint JURY DEMAND - 3

Jason E. Ankeny
Jason E. Ankeny P.S., Inc.
WSBA# 52908
130 N. Central Ave.
Suite 309
Phoenix, AZ 85004
(602) 606-8848
jason@ankenylawcorp.com

consular officer if the officer has no indication that such alien has not complied with the immigration laws and regulations of the United States.

12. Between July 2011 and January 2017, Mr. Gill was admitted to the United States at various ports of entries without any problems.

13. Mr. Gill began to experience irregular encounters at the border with CBP officers following the murder of his brother-in-law, Navdeep Sidhu, in Edmonton on or about January 11, 2017. He began to be referred for secondary inspection practically every time he applied for admission to visit his E-2 enterprise.

14. On or about February 22, 2017, Mr. Gill was referred to secondary inspection and required to give a sworn statement to officers at the Sumas Port of Entry regarding his admissibility. CBP Officer Kooiker was particularly interested in how Mr. Gill funded the farming operations, and it appeared to Mr. Gill that Officer Kooiker was going out of his way to link Mr. Gill's farming operations to criminal conduct tied to his brother-in-law. Mr. Gill presented documentation of legal operations and loans taken out to fund the start-up of the farm; he was found to be admissible to the United States and granted entry. Mr. Gill resumed crossing the border without issue from February 2017 until July 2018 upon his return from vacationing in Thailand.

15. During April of 2018, Mr. Gill, his spouse, and 17 friends took a vacation to Thailand where Mr. Gill's brother-in-law, Sandeep Sidhu, was invited to attend.

Complaint JURY DEMAND - 4

Jason E. Ankeny
Jason E. Ankeny P.S., Inc.
WSBA# 52908
130 N. Central Ave.
Suite 309
Phoenix, AZ 85004
(602) 606-8848
jason@ankenylawcorp.com

16. On or about August 5, 2018, Mr. Gill was referred to secondary inspection at the Sumas Port of Entry where he was questioned by Officers about his trip to Thailand in April.

17. Mr. Gill informed the officers that he went on the trip with his wife and a group of about 17 friends, all of which are working professionals. Mr. Gill's brother-in-law was invited, and on his own accord brought a few friends with him.

18. Mr. Gill was questioned about a photo in his phone from the trip where the group was posing around a tiger. The officers asked who the people in the picture were, how long he knew people in the group, and what they did on their trip. The officers also asked about a fight that apparently occurred at a night club, which the police arrived on scene and 3 people from the group were arrested.

19. Mr. Gill responded that he knew very little of the event as he was not present when it occurred. Despite this, Officer Kooiker continued asking questions about the fight and whether or not the police had been paid off. Despite that fact that Gill was not involved nor even present at the time, the officer continued asking questions related to his brother-in-law and friends. Mr. Gill replied that he did not know, his brother-in-law and friends spent most of the trip on their own.

20. Most of the questions asked by the officer centered on other individuals present in Thailand and did not focus on Mr. Gill.

Complaint JURY DEMAND - 5

Jason E. Ankeny
Jason E. Ankeny P.S., Inc.
WSBA# 52908
130 N. Central Ave.
Suite 309
Phoenix, AZ 85004
(602) 606-8848
jason@ankenylawcorp.com

21. The officers continued to search Mr. Gill's phone but after about 3 hours, they completed their inspection and Mr. Gill was granted admission into the U.S.

22. As he was given his possessions back, Officer Lewis warned Mr. Gill that he would be criminally charged if he attempted to alter or delete any material on his phone.

23. Mr. Gill noticed a pattern emerge with certain officer while crossing the border. Officer Kooiker and Officer Lewis seemed to carry a demeaning attitude towards him and would guarantee him a ticket to secondary inspection while other officers at the port would admit him without issue.

## DECEMBER 09, 2018 SECONDARY INSPECTION

24. On or about December 9, 2018, Mr. Gill applied for admission at the Sumas Port of Entry and was held for approximately 7 hours. After 3 hours of waiting, Officer Kooiker led him into a room where Officer Ottimer initiated a sworn statement and was questioned.

25. Mr. Gill reports that Officer Kooiker then took over questioning while Officer Ottimer typed the statement. And while Officer Kooiker asked the questions, Officer Ottimer typed and signed off as the interviewing officer.

26. Mr. Gill reports that the questioning was aimed at associating him to certain people, and the sworn statement was written to imply that he was not cooperative and holding back information. As Mr. Gill attempted to explain his situation, Officer Kooiker cracked immature jokes, chuckled at Mr. Gill's expense, and made fun of a serious situation. He

Complaint JURY DEMAND - 6

Jason E. Ankeny
Jason E. Ankeny P.S., Inc.
WSBA# 52908
130 N. Central Ave.
Suite 309
Phoenix, AZ 85004
(602) 606-8848
jason@ankenylawcorp.com

was repeatedly asked the same questions and asked about the same people, which he simply does not associate with in the manner the officer was attempting to illustrate.

27. At one point during questioning, Officer Kooiker stepped out of the room, and Mr. Gill asked Officer Ottimer if he had any rights at the border. Officer Ottimer informed him that he really did not, he could not refuse to answer questions or have rights to an attorney. Once they concluded the interview, the officers began printing his statement, Mr. Gill heard one officer exclaim, "17 pages, wholly!" and all four officers in the office started cheering and clapping.

28. Officer Ottimer then asked Mr. Gill to approach the counter and informed Gill that it was in his best interest to read the statement and sign it. As he began reading, Mr. Gill noticed that the name "Jimi Sandhu" had been inserted in places where he had never mentioned him. He began to cross out the name from places that he never said it, and he began to make changes to statements he had never made. He commented to Officer Ottimer that he made changes when he did not mention Jimi and that some of his responses were incorrect. Mr. Gill was given the new statement to read over; he noticed that there were still inaccurate statements and some of his edits were not changed, but Officer Ottimer refused to change anything else.

29. Mr. Gill asked for a copy of the original statement in order to demonstrate where his pencil edits were not corrected, but Officer Kooiker refused to give him a copy.

Complaint JURY DEMAND - 7

Jason E. Ankeny
Jason E. Ankeny P.S., Inc.
WSBA# 52908
130 N. Central Ave.
Suite 309
Phoenix, AZ 85004
(602) 606-8848
jason@ankenylawcorp.com

30. Officer Kooiker then informed Mr. Gill that his E-2 visa and his Nexus card were cancelled, and he was inadmissible due to his association to 5 people. Gill asked who Officer Kooiker was referring to. Mr. Gill reports that Officer Kooiker only chuckled and stated that Mr. Gill knew exactly who he was referring to. As Gill left the building to return to Canada, Officer Kooiker informed him to stop his associations to 5 people and to apply for a waiver.

## ISSUES WITH OTHER AGENCIES

31. In January 2019, Mr. Gill hired a lawyer to help resolve his cancellation and inadmissibility issue. He was advised to apply for a new E-2 visa at the U.S. Consulate in Vancouver. His attorney also requested a Security Advisory Opinion with the U.S. Department of State to clear any misidentifications of Mr. Gill. Mr. Gill submitted a new application for an E-2 visa and attended his interview in January 2019.

32. On or about April 11, 2019, Mr. Gill was called back to the Consulate for a second interview. Mr. Gill was interviewed by three Homeland Security Investigations officers. During the interview, one officer pointed out that Mr. Gill had a clean record, they informed Mr. Gill that he gave them information about drug shipments coming into the U.S., they could help him get a visa. At the conclusion of the interview, Mr. Gill was informed that this was one of many meetings, and they would contact him in a few weeks to see if he changed his mind. Mr. Gill had six years' worth of bank statements with him at the interview to prove his

Complaint JURY DEMAND - 8

Jason E. Ankeny
Jason E. Ankeny P.S., Inc.
WSBA# 52908
130 N. Central Ave.
Suite 309
Phoenix, AZ 85004
(602) 606-8848
jason@ankenylawcorp.com

conduct had always been lawful, but the officers were not interested in reviewing his documents.

33. Mr. Gill informed the officers that he had never trafficked drugs before, and the officer replied, "we know you haven't, but we have a reason to believe that you may know."

## REQUEST FOR ADMINISTRATIVE REVIEW

34. On information and belief, on or about January 17, 2020, Mr. Gill, through present counsel, mailed a Request for Administrative Review of Mr. Gill's E-2 visa cancellation to the Sumas Port of Entry. After approximately 30 days without hearing back from the Field Office, Mr. Gill's attorney called the Port of Entry to discover that the Office did not have the Request and did not have any idea about the Request. Mail tracking on the Request shows that the packet was delivered to the Field Office.

35. On information and belief, Mr. Gill's counsel sent a second Request for Administrative Review on or about March 04, 2020.

36. On information and belief, on or about March 30, 2020, Sumas Port Director sent the case file and information to Port Directors of Ward and Anacortes as well as a Ward Supervisor for them to review the case and provide their feedback. On or about April 1, 2020, the Anacortes Port Director stated that the information established was not enough to use the "reason to believe" standard successfully. On or about April 1, 2020, the Ward Port Director and Supervisor, in a combined statement, also stated that they believed the available

Complaint JURY DEMAND - 9

Jason E. Ankeny
Jason E. Ankeny P.S., Inc.
WSBA# 52908
130 N. Central Ave.
Suite 309
Phoenix, AZ 85004
(602) 606-8848
jason@ankenylawcorp.com

intelligence does not establish "reason to believe" that would support a 212(a)(2)(C) charge and that any conclusions otherwise are circumstantial and speculative-insufficient to meet that standard.

37. On information and belief, Mr. Gill's counsel reached out the Field Office on or about April 8, 2020 and was informed that Sumas leadership had reviewed the Request and agreed that the cancellation of Mr. Gill's visa was unwarranted. However, recent changes in the chain of command required the final approval of Mr. Gill's visa reinstatement to come from the Blaine Director of Field Operations.

38. On information and belief, on or about April 27, 2020, Mr. Gill's counsel called again to inquire as to the status of Mr. Gill's review. The Request was then scanned over to the Blaine Field Office for final review.

39. On information and belief, only one hour after the Request was scanned over to the Blaine Field Office, Counsel was informed by the Blaine Assistant Supervisor that he had reviewed the Request and he did not believe the Officers acted unjustly. Without further explanation, he denied the Request. Despite the fact that all area port directors asked to review the incident agreed that there was no "reason to believe" established, CBP agents still wrongfully denied the request. On information and belief, CBP agents continued to target Mr. Gill.

Complaint JURY DEMAND - 10

Jason E. Ankeny
Jason E. Ankeny P.S., Inc.
WSBA# 52908
130 N. Central Ave.
Suite 309
Phoenix, AZ 85004
(602) 606-8848
jason@ankenylawcorp.com

40. The denial of admission and cancellation Mr. Gill's E-2 visa was irrational and contrary to the statutory standards of the Immigration and Nationality Act and Department of Homeland Security regulations because it failed to consider all of the facts relevant to the decision to cancel Mr. Gill's visa and permanently brand Mr. Gill with the stigma of "drug trafficker", which has created a ripple effect of consequences including losing his privilege to enter the United States and oversee his farming operations.

41. The cancellation of Mr. Gill's E-2 visa caused Mr. Gill to lose access to his U.S. enterprise in Washington and the ability to protect his family's legacy. CBP's unlawful actions rendered Mr. Gill inadmissible to the United States to oversee operations of his berry farm, take over the family business as was intended, cut off a stream of income for his family, and resulted in his inability even to enter as a visitor for pleasure.

42. This is no immigrant waiver available for inadmissibility as a drug trafficker, Plaintiff has been deprived of the privilege to ever obtain an immigrant visa and reside in the United States.

**THE PSYCHOLOGICAL AND ECONOMIC INJURY CAUSED BY DEFENDANTS' ACTS**

43. CBP agents' intentional actions and targeting of Plaintiff have caused him to suffer psychological harm and injury.

Complaint JURY DEMAND - 11

Jason E. Ankeny
Jason E. Ankeny P.S., Inc.
WSBA# 52908
130 N. Central Ave.
Suite 309
Phoenix, AZ 85004
(602) 606-8848
jason@ankenylawcorp.com

44. Mr. Gill has been unable to work as Director of Operations for S&R Gill Farms, Inc. for over two years because of the cancellation of his visa and denial of his admission.

45. Mr. Gill's absence from the United States has harmed his employer, S&R Gill Farms, Inc. because he has been unavailable to oversee operations.

46. The resultant disruption of Mr. Gill's management may permanently and irreparably damage the farm's ability to generate revenue.

47. Since CBP's actions cumulating to December 09, 2018, Mr. Gill has not been able to sleep, feels depressed and is constantly anxious.

### V.   COUNT ONE: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

48. Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

49. The Defendants, law enforcement agents of the United States Custom and Border Protection Agency, committed the tort of intentional infliction of emotional distress under the laws of the State of Washington.

50. CBP agents acted in an outrageous and intolerable manner, by targeting Mr. Gill for close to two years, degrading the loss of a family member, making gratuitous remarks, altering his statement, clapping at the printer in front of Mr. Gill, chuckling during his interview, and wrongfully ruining his reputation.

Complaint JURY DEMAND - 12

Jason E. Ankeny
Jason E. Ankeny P.S., Inc.
WSBA# 52908
130 N. Central Ave.
Suite 309
Phoenix, AZ 85004
(602) 606-8848
jason@ankenylawcorp.com

51. During the course and scope of their employment, CBP agents actively targeted and pursued a baseless investigation against Plaintiff, detained him for 6-7 hours without food or water, mocked him, and altered his sworn statement, specifically intending to cause emotional harm and/or showed a reckless disregard for Plaintiff's emotional well-being.

52. As a direct and proximate result of the CBP agents' conduct, Plaintiff suffered severe emotional distress.

53. As a direct and proximate result of the CBP agents' conduct, Plaintiff suffered substantial damages, for which Defendants are liable to Plaintiff in an amount to be proven at trial.

## VI.   COUNT TWO: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

54. Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

55. In the alternative, Defendants should have known that constant pursuing and harassment of Plaintiff for almost two years, ultimately resulting in the loss of his nonimmigrant investor visa, would result in Plaintiff's severe emotional distress. The acts and omissions of Defendants as described above constitute negligent infliction of emotional distress was outrageous and extreme.

Complaint JURY DEMAND - 13

Jason E. Ankeny
Jason E. Ankeny P.S., Inc.
WSBA# 52908
130 N. Central Ave.
Suite 309
Phoenix, AZ 85004
(602) 606-8848
jason@ankenylawcorp.com

56. Plaintiff's emotional distress, humiliation and anxiety were proximately caused by Defendants' actions. Plaintiff's distress was that which a normally constituted and reasonable person would manifest in response to such acts.

57. As a direct and proximate result of the CBP agents' conduct, Plaintiff suffered substantial injury and damages, for which Defendants are liable to Plaintiff in an amount to be proven at trial.

### VII. COUNT THREE: NEGLIGENCE

58. Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

59. CBP agents, during the course and scope of their employment with defendant United States of America, committed negligence through their acts and omissions.

60. CBP agents breached their duty of reasonable care by negligently acting or failing to act such that they negligently failed to meet the standard of "reason to believe" that Mr. Gill is a drug trafficker or even state a valid reason for the cancellation of his visa.

61. CBP Officers and supervisors owed Plaintiff a duty of care to diligently apply United States immigration laws and act within the scope of their employment. CBP supervisors acted negligently in failing to properly monitor, control, and CBP agents.

62. The above-referenced officers failed to meet their duty of care by negligently misapplying the law and causing Mr. Gill severe injury and distress.

Complaint JURY DEMAND - 14

Jason E. Ankeny
Jason E. Ankeny P.S., Inc.
WSBA# 52908
130 N. Central Ave.
Suite 309
Phoenix, AZ 85004
(602) 606-8848
jason@ankenylawcorp.com

63. Defendants' negligent supervision and training and negligent failure to monitor the visa cancellation process was a substantial factor and proximate cause in causing Plaintiff's damages.

64. The Defendant's negligent cancellation of Mr. Gill's visa and denial of admission to the United States is contrary to the statutory standards, the regulations, the legislative history, and the intent of Congress, because the Defendants failed to meet the standard of "reason to believe" that Mr. Gill is a drug trafficker or even state a valid reason for the cancellation of his visa.

65. As a direct and proximate result of their conduct, Mr. Gill suffered damages.

66. The Defendants' denial of Mr. Gill's application for admission and subsequent cancellation of his investor visa caused damages resulting from loss of liberty and property, emotional pain and suffering, and loss of wages.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that the Court:

A. Enter a judgment for Plaintiff and against Defendants on Plaintiff's claims for relief;

B. Award Plaintiff Damages against Defendants resulting from Defendants' unlawful conduct, in an amount to be proven at trial;

C. Grant an award of attorney's fees and costs of this action;

Complaint JURY DEMAND - 15

Jason E. Ankeny
Jason E. Ankeny P.S., Inc.
WSBA# 52908
130 N. Central Ave.
Suite 309
Phoenix, AZ 85004
(602) 606-8848
jason@ankenylawcorp.com

D.  Grant such other relief as the Court may deem just and proper.

Dated this 2nd day of August, 2021.

*/s/ Jason E. Ankeny*
Jason E. Ankeny
Attorney for Plaintiff Talveer Gill

Complaint JURY DEMAND - 16

Jason E. Ankeny
Jason E. Ankeny P.S., Inc.
WSBA# 52908
130 N. Central Ave.
Suite 309
Phoenix, AZ 85004
(602) 606-8848
jason@ankenylawcorp.com